# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

MATTHEW A. MILLIRON,

    Plaintiff,

vs.

    Civil Action 2:17-cv-333
    Judge James L. Graham
    Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Matthew A. Milliron, brings this action under 42 U.S.C. §§ 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 13), and the administrative record (ECF No. 9). Plaintiff did not file a Reply. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff applied for disability insurance benefits in August 2015 asserting disability from lumbar spine degenerative disc disease, sciatic, right and left knee internal derangement, irritable bowel syndrome, depression, post-traumatic stress disorder, and sleep apnea. (R. at 197.) Plaintiff's claim was denied initially and upon reconsideration. Upon request, a hearing was held

June 7, 2016, in which Plaintiff, represented by counsel, appeared and testified. (R. at 4-41.) A vocational expert also appeared and testified at the hearing. (R. at 26-41.) On October 21, 2017, administrative law judge Kirsten King (the "ALJ") issued a decision finding that Plaintiff was not disabled at any time after August 1, 2015, the alleged onset date. (R. at 70-73.) On February 13, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 42-44.)

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

At the June 2016 administrative hearing, Plaintiff testified that he lives alone in an apartment. (R. at 10.) Plaintiff stated that he is the father of a six-year-old son, whom he sees approximately twice weekly. (R. at 7-8.) Plaintiff also stated that he attends some of his son's t-ball practices and games and one parent-teacher conference. (R. at 7.)

According to Plaintiff, he wakes up anywhere between four o'clock and seven o'clock in the morning and watches Netflix for "a good portion of the day." (R. at 11.) Plaintiff testified that he normally eats fast food around noon, which is usually his only meal of the day. (*Id.*) Plaintiff also testified that he rarely goes grocery shopping, except to buy juice or water, and that he does not drink coffee or tea. (R. at 12.) Plaintiff further testified that, after eating, he usually plays video games or watches more movies. (*Id.*) In the evenings, Plaintiff either sees his son or stays in and goes to bed around ten o'clock. (R. at 18.)

Plaintiff testified that he can do laundry without any problems and is responsible for cleaning his apartment, although he does not recall ever cleaning it. (R. at 14.) Plaintiff also testified that his last job was as a maintenance worker for the Department of Energy in

2

Tennessee, where he was responsible for maintaining diesel law enforcement vehicles. (R. at 14-15.) Plaintiff stated that he usually worked ten-hour days, four days per week. (R. at 15.) According to Plaintiff, over the course of the eighteen months he worked there, he experienced increasing difficulty "handling the stress of deadlines and actually dealing with people." (*Id.*) Plaintiff testified that his employment contract was flexible and did not require him to maintain a strict forty-hour work week, but that he always managed to meet his requirement to work eighty hours in a two-week period. (R. at 16-17.) According to Plaintiff, the company hires disabled workers who work in teams and may take breaks when needed, as well as receive assistance with completing tasks from the other team members. (R. at 24-25.)

Plaintiff testified that he has a one-hundred percent disability rating from the Veteran's Administration and that he receives regular treatment for depression. (R. at 21.) Plaintiff also testified that he experiences anxiety when he is around other people, even at his son's t-ball games. (R. at 21-22.) Plaintiff further testified that he feels tired "all the time" and that he cries for no reason a few times daily. (R. at 22.) Plaintiff stated that he takes sleep medications but still sleeps only a few hours per day. (*Id.*) Plaintiff also stated that, at the urging of his psychiatrist, he quit drinking alcohol two months prior to the administrative hearing but has not experienced a difference in his condition. (R. at 24.)

## B. Vocational Expert Testimony

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (R. at 30-41.) Based on Plaintiff's age, education, and work experience and the RFC ultimately determined by the ALJ, the VE testified that Plaintiff could perform unskilled, light jobs available in the national economy, including small parts assembler,

3

laundry worker, assembly machine tender, inspector hand packager, and injection molding machine tender. (R. at 31-32.) If limited to "goal oriented work, but no constant production rate pace work such as an automated assembly line," the VE testified that the hypothetical person could perform all of the previously mentioned jobs, except small parts assembler." (R. at 33.)

### III. MEDICAL RECORDS

**State Agency Review**

On October 29, 2015, Todd Finnerty, Psy.D., reviewed Plaintiff's record for the state agency pursuant to his application for benefits. Dr. Finnerty found Plaintiff moderately limited in his ability to understand and remember detailed instructions but found that he can understand and remember simple instructions. (R. at 86.) Likewise, Dr. Finnerty found Plaintiff moderately limited in his ability to carry out detailed instructions, but not significantly limited in his ability to carry out very short and simple instructions. (*Id*.) Dr. Finnerty further found Plaintiff moderately limited in his ability to maintain attention and concentration for extended periods. (*Id*.) Dr. Finnerty opined that Plaintiff "has a reduced stress tolerance. He can complete simple, routine tasks, which are not fast paced, or require high production quotas." (*Id*.) Dr. Finnerty also opined that Plaintiff "has some irritability and some anger. He can interact with the public, co-workers and supervisors on an occasional, superficial basis." (R. at 87.)

On February 23, 2016, state agency psychological consultant Cindy Matyi, Ph.D., reviewed Plaintiff's records for the state agency upon reconsideration. Dr. Matyi found Plaintiff moderately limited in his ability to understand and remember detailed instructions but found that he can understand and remember simple instructions and occasionally complex instructions. (R. at 102.) Likewise, Dr. Matyi found Plaintiff moderately limited in his ability to carry out

4

detailed instructions, but not significantly limited in his ability to carry out very short and simple instructions. (*Id.*) Dr. Matyi further found Plaintiff moderately limited in his ability to maintain attention and concentration for extended periods. (*Id.*) Dr. Matyi opined that Plaintiff "can carry out simple and occasional complex tasks, maintain attention, make simple decisions, and adequately adhere to a schedule. May need some flexibility in terms of time limits and production standards." (R. at 103.) Dr. Matyi also opined that Plaintiff "has irritability and some anger. He can interact with the public, co-workers and supervisors on an occasional, superficial basis." (*Id.*)

## IV. THE ADMINISTRATIVE DECISION

On October 21, 2017, the ALJ issued her decision. (R. at 60-73.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since August 1, 2015, the alleged onset date. (R. at 62.) The ALJ found that

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Plaintiff has the following severe impairments: degenerative disc and joint disease, depression, anxiety disorder, and a history of substance abuse. (*Id*.) She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 63-64.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except as follows: the claimant could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; however, he should never climb ladders, ropes, or scaffolds. The claimant should avoid all exposure to unprotected heights and all use of dangerous machinery. The claimant is limited to simple, routine tasks. He could only occasionally interact with co-workers and supervisors. Finally, the claimant could interact with the public no more than approximately ten percent of the workday, but that contact should preclude transactional interaction, such as sales or negotiations.

(R. at 64.) In determining Plaintiff's MRFC, the ALJ gave "some weight" to the assessments provided by the state agency psychological consultants. (R. at 69.) The ALJ noted that the consultants concluded that Plaintiff has moderate restriction in his activities of daily living, moderate difficulties maintaining social functioning, and moderate limitation maintaining concentration, persistence, or pace. (*Id*.) The ALJ found that the "state agency assessment is well supported and there is no subsequent evidence to support a departure from their conclusions." (*Id*.) The ALJ, however, "provided somewhat different limitations in order to better quantify the claimant's workplace restrictions and abilities." (R. at 70.) The ALJ stated that the reduced social demands in the RFC "should also allow the claimant to better withstand work pressure since the potential stress associated with more frequent and/or more involved interactions has been reduced, as has the stress or difficulties typically involved in more complex tasks. (*Id*.)

The ALJ concluded that Plaintiff is unable to perform any of his past relevant work as a diesel truck mechanic, satellite system mechanic, or security officer. (*Id*.) Relying on the VE's testimony, the ALJ determined that Plaintiff could perform at least five jobs at the light, unskilled level and five jobs at the sedentary, unskilled level that exist in the local and national economy. (R. at 71-72.) She therefore concluded that Plaintiff was not disabled under the Social Security Act from August 1, 2015, through the date of the administrative decision. (R. at 72.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial

7

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff puts forward one assignment of error. Plaintiff contends that the ALJ failed to "incorporate all of plaintiff's mental health limitations into her determined residual functional capacity and the hypothetical question." (ECF No. 10 at 5.) Specifically, Plaintiff argues that the ALJ erred by failing to include the limitations endorsed by the state agency consultants. (*Id*. at 7.) Plaintiff reasons that, because the ALJ "had no criticism of the State agency opinions and even determined that the assessments were well supported," the ALJ was bound to incorporate their opined limitation in her RFC determination. (*Id*.) Accordingly, Plaintiff believes the ALJ committed reversible error by failing to "include any restrictions on time limits, pace or production quotas, . . . limitations on the *quality* of interactions between plaintiff and his coworkers and supervisors, and . . . limitation on adaptation to changes in the workplace." (*Id*.)

As an initial matter, the Undersigned notes that the ALJ gave only "some weight" to the state agency consultants' opinion, rather than "great" or "controlling" weight. (R. at 69.) An

examination of the ALJ's conclusions, furthermore, shows that the ALJ gave weight to the consultants' opinions with respect to Plaintiff's general level of functional restriction in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (*Id*.) Contrary to Plaintiff's argument, the ALJ explicitly declined to give controlling weight to any opinion regarding how those levels of functional restriction should be quantified in the RFC determination. (R. at 70.) Indeed, the determination of a claimant's residual functional capacity is entirely within the purview of the ALJ, and "this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005.)

Next, it is unclear exactly what level of restriction Plaintiff believes the ALJ should have adopted. A review of the consultants' opinions reveals that they themselves did not agree about Plaintiff's limitations in concentration, persistence, and pace. Dr. Finnerty opined that Plaintiff can only complete "simple routine tasks, which are not fast paced, or require high production quotas." (R. at 86.) Dr. Matyi, in contrast, did not conclude that Plaintiff requires accommodation in these areas. She found merely that Plaintiff "[m]ay need some flexibility in terms of time limits and production standards." (R. at 103.) Moreover, neither opinion is quantifiable, leaving a broad range of possible limitations that would comport with their findings even had the ALJ given them greater weight than she did.

With respect to the consultants' opinion that Plaintiff be limited to "superficial" interaction with co-workers and supervisors, Plaintiff's argument that the ALJ erred in only restricting him to "occasional" interaction is without merit. This Court has held that where a state agency consultant, whose opinion is given great weight by the ALJ, finds a claimant

9

"limited to [occasional] superficial social interactions in a less public setting," an RFC limiting him to only "occasional interaction" with co-workers and supervisors is "at least as restrictive." *Harris v. Comm'r of Soc. Sec.*, No. 2:17-CV-131, 2017 WL 4769007, at *4 (S.D. Ohio Oct. 23, 2017), *report and recommendation adopted*, No. 2:17-CV-131, 2017 WL 5507618 (S.D. Ohio Nov. 17, 2017).

Finally, even were the ALJ's mental RFC determination somehow erroneous, Plaintiff is unable to show that prejudice results. Remand is appropriate here only if the ALJ's ultimate decision is based on the VE's answer to a hypothetical question that did not accurately reflect the claimant's limitations. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). To the extent Plaintiff argues that the ALJ erred by not accounting for limitations for concentration, persistence and pace, his argument is misplaced. When asked during the administrative hearing whether the individual described by the ALJ's original hypothetical but limited to "goal oriented work [and] no constant production rate pace work" could find work, the VE responded with four jobs that all exist in the local and national economies. (R. at 33.) The record is clear, then, that even were Plaintiff's mental residual functional capacity amended to include his preferred limitations, he would still not be disabled under the Social Security Act.[2] Although the Undersigned has found none, any error in formulating Plaintiff's RFC would, therefore, be harmless. Accordingly, the Undersigned finds Plaintiff's contention of error is without merit.

---

[2] The Undersigned notes the state agency found Plaintiff not disabled both initially and upon reconsideration despite the consultants' allegedly more restrictive RFC findings. (R. at 89, 105.)

## VII. CONCLUSION

In conclusion, from a review of the record as a whole, the Undersigned finds that substantial evidence supports the ALJ's decision denying benefits. Accordingly, the Undersigned **RECOMMENDS** that the Commissioner of Social Security's decision be **AFFIRMED** and Plaintiff's Statement of Errors be **OVERRULED**.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994

(6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: July 12, 2018                     /s/ *Elizabeth A. Preston Deavers*
                                     ELIZABETH A. PRESTON DEAVERS
                                     UNITED STATES MAGISTRATE JUDGE